MARIE W. NORTH, ET AL.

*vs.*

MARTHA JEWETT HARRIS, ET. AL.

Kennebec.    Opinion September 17, 1927.

*There can be no remedy unless there is a cause for relief upon which alone equitable remedial justice is founded, without which the court has no jurisdiction.*

In this case the trust having terminated, the plaintiffs have no interest to ask the equity court to construe the will, nor can consent by the defendants confer jurisdiction.

On report. A bill in equity seeking the construction of certain paragraphs in the will of James W. North who died June 7, 1882. Upon a hearing by agreement of the parties the cause was reported to the Law Court for the determination of the rights of the parties

upon so much of the evidence as is admissible, and final judgment thereon. Judgment for the defendants.

The case fully appears in the opinion.

*George W. Heselton and Edgar F. Taft*, for plaintiffs.

*Andrews, Nelson & Gardiner*, for Martha Jewett Harris and Carolina N. McGunnigle.

*Benedict F. Maher*, for Roger North.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, STURGIS, PATTANGALL, JJ.

DUNN, J. Necessarily the first inquiry in this case is, did James W. North by his last will create a trust which is still continuing for the benefit of the plaintiffs, each of whom is the childless widow of a son of the testator? The justice below reserved the case by consent for decision by the full court on the legally admissible evidence.

James W. North died, testate, domiciled at Augusta, on June 7, 1882. His wife was dead already. He was survived by his only three children, namely, George F. North, James W. North, called Junior to distinguish him from his parent, and Horace North. Of the sons, George F. North was the first to die, and his widow and only child died long before the present proceedings were begun. James W. North, Jr., the son whose death next occurred, was outlived by his second wife, who had no children. Of the former marriage of James, Jr., which marriage death dissolved, three children had been born, viz., the three defendants in this cause. Horace North, the son last to die, on April 1, 1926, was survived by his wife, but not by child.

When the testator made his will, in the lifetime of his wife, he left what in convenience may be designated his residuary real estate, as the corpus of a trust which the will created. It is with this trust that the instant suit would have concern.

In the paragraph numbered fourth the will provided that the trust which was to be created should exist for the benefit of the testator's widow during her life.

The next or fifth paragraph devised the residuary realty in trust to the sons, James W. North, Jr., and Horace North, during their

lives and the life of the survivor of them, and provided for the payment of the yearly net income to the testator's widow and the testator's three sons, under the name of the widow and that of each son, for the periods of the several lives of the widow and the sons. It provided, too, that in case a son died the income that would have been for him if living should be for his widow and children during the continuance of the trust estate.

That the trust was to continue throughout the life of the last surviving son is evident from the provisions mentioned and from that of the tenth paragraph for the appointing of a trustee in the apparently contemplated event of the son, named beneficiary only, outliving the sons who were trustees and beneficiaries as well. The pertinent phraseology of the paragraphs, as the case hinges, it would serve no useful purpose to detail.

The question of what would have been the situation had the wife of the testator lived longer than all the sons of the testator is not of consequence because the wife was the first to die.

Language determinative of the testator's intention, as such intention is of moment here, is found in another part of paragraph fifth and in the sixth paragraph of the will.

The fifth paragraph embraced also the contingency of a son dying survived by his wife but "leaving no child or children or issue of a deceased child," and the widow in need of income beyond what the estate of her husband afforded. The provision, so far as it is material to repeat its text, was as follows:

> " * * Leaving a widow needing further support than the deceased son's estate may furnish, she is to be paid such part of the deceased son's share of the net income during her widowhood, if her necessities continue so long, * * ,"

Paragraph sixth was in these words:

> "Sixth, I give and devise to my grandchildren living at the decease of my last surviving son, when the trust estate will end, and to children of deceased grandchildren by right of representation, all of my real estate held in trust as aforesaid, to have and to hold to them and their heirs forever, divested of the trust."

After the death of his wife, the testator made a codicil to his will. The codicil in no way revoked or annulled the will, but created other trusts, one expressly of real estate not included in that which the will created, which later trust, in difference from the earlier trust, made no mention of the wives of the testator's sons. The codicil trust was limited to the time of the death of the son living the longest, when there should be division in fee among the testator's grandchildren. The codicil then republished and ratified the prior will.

Plaintiffs claim that the trust created by the antecedent will did not terminate with the death of the son, Horace North, but should continue throughout the life of each plaintiff, the one of whom, as has been observed before, is the childless widow of Horace North, and the other the childless widow of James W. North, Jr.

The defendants contend that the trust created by the will terminated with the death of the testator's last surviving son.

Were the provision for the widows to be wrested from the paragraph in which it was placed, and read without relation to that paragraph, and to the immediately following and cognate paragraph sixth, it would, to be sure, be quite sustainable that the provision for the widows is continuing.

But, when the several parts are read with relation to each other so as to form one consistent whole, it is as distinct as need validly be that the testator employed his own way of saying this:

> " 'During the continuance of the trust estate,' and 'during her widowhood,' that is to say, while during her widowhood the trust continues, the childless and necessitous widow of any of my sons shall be entitled to a certain part of the income that would have been for her husband had he lived."

There are general principles governing the construction of wills, which principles are designed to ascertain and effectuate the intention of a testator as expressed in his will, viewed in the light of the circumstances attending its execution. But rare indeed are the instances where two wills use exactly the same language to express the dispositive intentions of different testators. Every will may be said to have individuality, to speak purpose in its own verbal collocation, consistently with the established rules of law and public policy. As a usual thing, there are material differences between wills, and like-

wise in the circumstances attending the making of wills, which may be considered in order to arrive at a testator's true intent, and insure a proper execution of his will, or a correct administration of the testamentary trust he created.

So, unless cases cited are in every respect directly in point and agree in every circumstance, judicial construction of other wills except so far as they establish general rules, or mark the importance of adhering to a course of decisions whose authority has established a rule of property on which many titles and estates depend, are not of controlling force in respect to another will. However, the reasoning of the cited cases may beacon the way to interpretation and construction. The case of *Hyde* v. *Wason*, 131 Mass., 450, instanced by defendant's counsel, sufficed such office in the effort of this court to arrive at the present testator's intention.

This is what the plaintiffs took under the testamentary disposition:

They took only what the will, harmonizing the separate paragraphs of the instrument and permitting all related parts to stand together, gave them — an equitable vested interest limited by the conjoint limitations of childless widowhood in necessitous circumstances and the death of the testator's last surviving son.

In the course of human events the trust has ended; it ended with the death of Horace North, the last of the testator's sons. And thereupon that which had been the corpus was "divested of the trust."

It has seemed requisite thus to recite and deduce, that there might be outline for the conclusion that, the trust having terminated, the plaintiffs have no interest to ask the equity court to construe the will, nor can consent by the defendants confer jurisdiction.

*Decree accordingly.*